FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 CR 576 |
| | ) | Judge Samuel Der-Yeghiayan |
| CARLEOUS CLAY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND TESTIMONY
REGARDING HISTORICAL CELL SITE INFORMATION
AND CELLULAR PHONE LOCATION**

Defendant **CARLEOUS CLAY**, by his attorneys, **BLEGEN & GARVEY**, pursuant to Fed. R. Evid. 701, 702, *Daubert v. Merrell Dow*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), moves this Court to enter an order excluding any evidence regarding historical cell site information and testimony relating to the location of cellular telephones; or, in the alternative, to conduct an evidentiary hearing regarding the admission of such evidence.

In support thereof, Defendant, through counsel, shows to the Court the following:

**I.     Introduction**

Defendant is charged in a nine-count superseding indictment with kidnapping, in violation 18 U.S.C. § 1201(a)(1) (Count One); witness tampering, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Two); use of fire in the commission of another felony, in violation of 18 U.S.C. § 844(h)(1) (Count Three); carjacking, in violation of 18 U.S.C. § 2119(2) (Count Four); robbery of money in the custody of a bank involving kidnapping, in violation of 18 U.S.C. §§ 2113(a) & (e) (Counts Five & Six); robbery affecting interstate commerce, in violation of 18

U.S.C. §1951(a) (Counts Seven & Eight); and knowingly transporting in interstate commerce a stolen motor vehicle, in violation of 18 U.S.C. § 2312 (Count Nine).

As part of discovery, the government has produced historical cell site records for phones allegedly used by Mr. Clay. These records reflect the location of the cell towers and antennas used during certain cellular phone calls. While the government has not made expert disclosures pursuant to Rule 16 of the Federal Rules of Criminal Procedure, counsel believe it may seek to introduce expert testimony and analysis regarding these records. Specifically, counsel believes the government may seek to present testimony regarding the locations of cell towers, cellular telephones, and their relation to purportedly relevant locations in this case. The defense objects to the admission of evidence related to historical cell site information, and to testimony, expert or otherwise, on the subject of the location of cellular phones.

## II.     Historical Cell Site Evidence is Inadmissible under Rule 701

As stated, the government has not yet disclosed how, or if, they are seeking to use the cell site records produced in discovery. In other cases, the government has argued that testimony regarding the location of cell towers used during specific calls is admissible under Rule 701 of the Federal Rules of Evidence, which allows lay witness testimony when that testimony is "'rationally based on [a] witness's perception' or based on 'a process of reasoning familiar in everyday life.'" *United States v. Evans*, 892 F. Supp. 2d 949, 953-54 (N.D.Ill. 2012)(Lefkow, J.), *citing* Fed. R. Evid. 701 & advisory comm. notes (2000 amends.). This theory of admissibility depends on the flawed assumption that a cell phone call must necessarily utilize the nearest tower and that the individual making the call must therefore be within a certain geographic range. *Id.* at 956.

In reality, the issue is far more complicated. A cell phone in idle mode "regularly communicates with cell towers in its network…[and] tries to determine which cell tower has the strongest signal." *Id*. at 952. When that cell phone makes a call, it typically connects to the tower with the strongest signal. *Id*. "In a perfectly flat world with equally spaced and identical masts" the tower with the strongest signal would generally be the closest tower. *Id*. at 953. However, in the real world, a variety of factors affect tower signal strength, including technical characteristics of the tower, antennas, and [cell] phone, environmental and geographical features, and indoor or outdoor usage." *Id*, *citing* Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone*, 18 RICH J.L. & TECH. 3, at *7 (Fall 2011).

The complicated nature of this technology underscores the necessity for expert testimony on the issue. As the *Evans* court found, "[u]nderstanding how the aforementioned factors affect a cell phone's ability to connect to a particular tower…cannot be said to be within the perception of an untrained layman. Rather, this type of understanding demands 'scientific, technical, or other specialized knowledge' of cellular networks and 'results from a process of reasoning which can be mastered only be specialists in the field.'" *Id*. at 954, *citing* Fed. R. Evid. 701 & advisory comm. notes (2000 amends.), *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002).

Indeed, without an expert, even testimony regarding the location of cell phone towers would be at best, irrelevant, and at worst, misleading and prejudicial. The relevancy of the cell tower locations depends on the government's ability to prove that they are an accurate predictor of the location of a phone. The government cannot simply admit evidence regarding the cell phone tower used during a certain call and leave the jury with the inference that the tower used is

3

the tower nearest to the phone. Such testimony would be extremely prejudicial given the fact that, as stated above, this is not always the case.

### III. Historical Cell Site Information in the Context of Rule 702 and *Daubert*

Moreover, should the government seek to call an expert witness to testify regarding cell site data, it must first prove that such testimony passes muster under Rule 702 of the Federal Rules of Evidence and the Supreme Court's pronouncements in *Daubert*.

Federal Rule of Evidence 702 provides that an expert "may testify in the form of an opinion or otherwise" if: (1) the expert's knowledge will aid the trier of fact; (2) if the testimony is based on sufficient facts or data; (3) if the testimony is the product of reliable principles and methods; and, (4) the expert has reliably applied the principles and methods to the facts of the case. Under Rule 702, the district court functions as a "gatekeeper" and must evaluate the admissibility of proffered expert testimony. *United States v. Glynn*, 578 F. Supp 2d 568, 570-71 (S.D.N.Y. Sept. 22, 2008)(Rakoff, J.).

The current version of the rule reflects the Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1993). In *Daubert*, the Court, concerned with the undue influence so-called expert testimony may have over a jury, established a flexible, factor-based approach to determine the reliability of such testimony. 509 U.S. at 593-94; *see also United States v. Diaz*, 2007 WL 485967 at *4 (N.D. Cal. Feb. 12, 2007) (Alsup, J.) These factors may include: (1) whether a method can or has been tested; (2) the known or potential rate of error; (3) whether the methods have been subject to peer review; (4) whether there are standards controlling the techniques operation; and, (5) the general acceptance of the method within the relevant community.

*Daubert*, 509 U.S. at 593-94. Its fundamental task is to ensure relevance and reliability. *Kumho,* 526 U.S. at 151-52.

*Evans* examined the reliability of expert testimony concerning historical cell site data. Specifically, *Evans* held that the granulization theory—a method used to determine the location of a phone during a call using historical cell site information—was unreliable, and thus inadmissible under Rule 702 and *Daubert*. *Evans*, 892 F. Supp. 2d at 956-57. In so concluding, the court found that the granulization theory has not been subject to scientific testing or formal peer review and has not been generally accepted in the scientific community. *Id*. at 957.

Though expert disclosures have not yet been made, counsel believes that the government may seek to call an expert witness to analyze and present testimony regarding historical cell site data. In order to provide the Court and parties with sufficient time to resolve this matter prior to trial, Defendant highlights this issue for the Court now as Defendant may seek to exclude such testimony because it is not sufficiently reliable. Defendant would reserve the right to supplement, withdraw or amend this motion after receiving the government's expert disclosure.[1]

---

[1] Certain types of expert testimony related to historical cell site data may well be admissible.

**IV.     Conclusion**

For all of the foregoing reasons, Defendant respectfully request that this Court enter its order excluding historical cell site information, and testimony regarding the location of cellular telephones, from introduction into evidence pursuant to Fed. R. Evid. 701, 702, *Daubert*, and *Kumho*, or, in the alternative, conduct an evidentiary hearing on the matter.

           Respectfully submitted,

           **s/ Patrick W. Blegen**
           **PATRICK W. BLEGEN**, One of the
           Attorneys for Defendant Carleous Clay.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100